RICHARD COTTER, Plaintiff, *v.* CONSOLIDATED CONSTRUCTION COMPANY *et al.*, Defendants.—(CONSOLIDATED CONSTRUCTION COMPANY, Third-Party Plaintiff-Appellee, *v.* WHITE CITY ELECTRIC COMPANY, Third-Party Defendant-Appellant.)

First District (3rd Division)   Nos. 62552, 62636 cons.

Opinion filed June 22, 1977.

Baker & McKenzie, of Chicago (Donald J. Brown, Jr., of counsel), for appellant.

Nolan, O'Malley and Dunne, of Chicago (Robert J. Nolan and Robert Emmett Nolan, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Richard Cotter was an employee of White City Electric Company (White City). White City subcontracted to do electrical work at O'Hare Field for Consolidated Construction Company (Consolidated). Cotter was injured on the first day that he or anyone else from White City was at the construction site. He brought an action against Consolidated under the Illinois Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60-69). Consolidated filed actions against the employer, White City, alleging that it should be indemnified under certain provisions of a contract that it had entered into with White City and also on a theory that its conduct was merely passive while the conduct of White City was active. Cotter received an $18,000 judgment against Consolidated after a jury verdict.

The trial court dismissed that portion of Consolidated's third-party complaint against White City based on an active-passive theory. It directed a verdict in favor of Consolidated and against White City in the amount of $18,000 on the indemnity provision in the contract. White City appeals from the judgment entered against it and in favor of Consolidated.

White City contends that the indemnification provision of the contract is not broad enough to allow Consolidated to be indemnified against its own negligence. White City also contends that the contract is unenforceable for other reasons which will not be elaborated or considered because of the resolution of the first issue in favor of White City.

Cotter was injured when he fell from some planking that was being used as a bridge. The planking had no cleats, no side rails and no toeboards. No one from White City was involved in the erection of the planking. The evidence indicates that the planking had been erected by Consolidated. The work was also supervised by Consolidated personnel.

The third-party complaint by Consolidated against White City alleges that on December 8, 1969, Consolidated entered into an agreement with White City which contains the following provision:

> "[White City] shall * * * indemnify and save harmless [Consolidated] * * * against all loss, * * * on account of * * * injuries, * * * to persons (including, without limiting the generality of the foregoing, employees of [White City]) * * * in any way arising out of or connected with the performance of the work by [White City] or the use by [White City] or its employees, * * * of facilities or equipment furnished or owned by [Consolidated], * * * including, without limiting the generality of the foregoing, all claims arising out of the operation of the structural work law * * *."

White City argues that a fair reading of the indemnification provision, " * * * in any way arising out of or connected with the performance of the work by [White City] * * *," does not allow indemnification. It asserts that there is no provision that White City shall indemnify Consolidated for Consolidated's acts of negligence. To that Consolidated responds that there can be no more specific language than is contained in the contract. It emphasizes that portion of the contract that immediately follows that emphasized by White City, that is, "in any way arising out of or connected with the performance of the work of [White City] or *the use by [White City] or its employees * * * of facilities or equipment * * * owned by the contractor * * *.*" (Emphasis added.) White City was the "user of the equipment", the bridge. It argues further, there is no ambiguity in the phrase, "all claims arising out of the operations of the

structural work law." To this White City replies that the argument concerning the phrase that mentions the Structural Work Act which Consolidated says makes the provisions specific enough to allow indemnification misses the obvious distinction. The distinction, it asserts, is that Consolidated may be held liable under the Structural Work Act by simply passively being in charge of the work and in that event the language of the indemnification clause is most readily open to the interpretation that Consolidated may be indemnified for technical or passive violations of the Act but not for a violation of the Act based on its own negligence as there is no reference whatsoever to any indemnification for the negligence of Consolidated. White City after recounting the evidence states that the active negligent conduct of Consolidated's employees was the proximate cause of the injuries. It notes that the trial court realized this and ruled that Consolidated could not sustain a *prima facie* case on an active-passive theory. White City concludes that the language is inexplicit and cannot stand in light of the rule that indemnity contracts must be strictly interpreted.

■■ In *Westinghouse Electric Elevator Co., v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 533, 70 N.E.2d 604, the court said, "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citations], or such intention is expressed in unequivocal terms." In *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272, the plaintiff, an employee of a subcontractor, alleged he was injured by a wooden beam which, as a result of Maxon's negligence, fell from the top of a building. Maxon Construction Company sought indemnity from the employer of the plaintiff, the subcontractor, based on an indemnity provision that stated that the subcontractor would indemnify Maxon Construction Company " * * * against all expenses, claims, suits or judgments of every kind whatsoever * * * by reason of, arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor's work." The court after noting the previously cited provision of *Westinghouse* concluded, "* * * that when measured against the standards set forth in *Westinghouse*, it does not, under the circumstances alleged in the pleadings, provide indemnity against claims arising out of Maxon's own negligence, * * *."

■■ *Westinghouse* and *Tatar* lead us to the conclusion that the provisions of this indemnity agreement are not broad enough to cover the negligent conduct of Consolidated in erecting the planking used as a bridge. We do not believe that the portions of the contract which provide for indemnity in connection with the work performed by White City or the use by White City or its employees of the facilities or equipment of

Consolidated clearly and unequivocally provide for indemnification against Consolidated's own negligence. The additional provision concerning all claims arising out of the operations of the structural work law does not unequivocally provide for claims against Consolidated's own violations of the structural work law.

The judgment of the circuit court of Cook County is reversed.

Reversed.

SIMON, P. J., and McNAMARA, J., concur.