WESLEY COVERDILL, Plaintiff, v. LURGI CORPORATION *et al.*, Defendants (Hoffman LaRoche & Company, Third-Party Plaintiff-Appellant; AC & S, Inc., Third-Party Defendant-Appellee; Lurgi Corporation, Third-Party Plaintiff-Appellant).

First District (5th Division)   No. 85—1896

Opinion filed June 20, 1986.—Modified on denial of rehearing August 22, 1986.

Dowd & Dowd, Ltd., of Chicago (Michael E. Dowd, Marybeth Jacobsen, and Philip J. McGuire, of counsel), for appellant.

Tyrrell & Flynn, of Chicago (Marthe C. Purman, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from an order of the trial court granting the motion of third-party defendant, AC & S, Inc. (AC & S), to strike counts I and III of the second amended third-party complaint filed by defend-

ant, third-party plaintiff, Lurgi Corporation (Lurgi) and counts I and III of the third amended third-party complaint filed by defendant, third-party plaintiff, Hoffman LaRoche & Company (Hoffman LaRoche)[1]. The order was subsequently amended to include the special finding required by Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). The issues raised on appeal are (a) whether the implied-indemnity cause of action set forth in count I was abolished by the Contribution Among Joint Tortfeasors Act (the Contribution Act) (Ill. Rev. Stat. 1981, ch. 70, pars. 301 through 305); and (b) whether AC & S had a contractual duty to obtain indemnity insurance for Lurgi.

It appears that plaintiff, Wesley Coverdill, was injured at a construction site where he was employed by AC & S, a subcontractor, and he filed a complaint against Lurgi and others with one count based on negligence and a second on the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69). Lurgi then filed a third-party complaint against AC & S for implied indemnity, contribution, and breach of a contractual provision to obtain insurance to protect Lurgi. The trial court struck both the implied-indemnity and breach-of-contract counts of Lurgi's second amended third-party complaint and this appeal followed.

OPINION

█ In support of its contention that the trial court improperly struck its implied-indemnity count, Lurgi argues that the Contribution Act did not abolish the common law remedy of implied indemnity. We note, however, that in *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333, it was held that an implied-indemnity action was no longer viable in a Structural Work Act case, and in *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379, in the context of a wrongful-death action based on negligence, it was held that implied indemnity no longer exists in Illinois in view of the Contribution Act. In light of the fact that both *Heinrich* and *Allison* are presently under consideration by the supreme court, we will not reexamine this issue but, in accepting the holding in those cases, we find that the trial court properly struck Lurgi's implied-indemnity count.

It is also contended by Lurgi that the trial court improperly struck count III, which alleged a breach of a contractual obligation to obtain insurance to protect it against claims such as those asserted by

---

[1] Hoffman LaRoche, the owner of the property, filed a motion for leave to adopt the briefs filed by Lurgi, which motion has been previously granted by this court.

Coverdill, plaintiff in the original action. The relevant contractual provisions are as follows:

"ARTICLE 10 GENERAL INDEMNITY: the subcontractor shall indemnify Lurgi and/or Lurgi's customer against and save them harmless from any and all loss, cost, damage or expense of every kind and nature arising out of injuries to or death of persons (including without limitation, Lurgi, Lurgi's customer's, the Sub-contractors's and sub-subcontractor's, employees, agents, licensees and representatives) or damage to or destruction of property (including without limitation, property of Lurgi, Lurgi's customer, the Subcontractor and any sub-subcontractor and property of their respective employees, agents, licensees and representatives) in any manner caused by resulting from, incident to, connected with or growing out of performance of the Contract unless caused solely by the negligent acts or omissions of Lurgi, Lurgi's customer, or their employees, agents, licensees or representatives. The Subcontractor shall at its own expense defend any and all actions based on the foregoing.

\* \* \*

ARTICLE 11 INSURANCE: The Subcontractor shall maintain at least the following insurance coverages with an insurance company or companies satisfactory to Lurgi.

(1) Employer's Liability Insurance...

(2) Workmen's Compensation Insurance...

(3) Comprehensive Public Liability and Property Damage Insurance...

(4) Contractural [sic] Liability Insurance to cover liabilities assumed under Article 10 of these General Conditions."

We note that AC & S' first motion to strike was based on section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1981, ch. 29, par. 61), which provides that in a construction contract an agreement to indemnify another person from that person's own negligence is "void as against public policy and wholly unenforceable." In *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189, however, this court held that an agreement by a subcontractor to obtain insurance to indemnify the contractor against claims arising against the contractor was not prohibited by the statute. In the present case, the trial court relied on *Zettel* when it denied AC & S' original motion to strike and, although Lurgi has reargued this point here, we agree with AC & S' observation that *Zettel* is not helpful in deciding the question as to whether the agreement here

was clear and explicit in requiring AC & S to obtain insurance covering Lurgi for its own negligence. AC & S' third motion to strike challenged count III solely on the ground that the contractual provisions were not explicit enough to so obligate AC & S, and it was on this basis that the order appealed from was entered.

■■ ■ Turning then to this issue, we note the general rule with respect to construction of agreements to indemnify was stated as follows: "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, [citations] or such intention is expressed in unequivocal terms. [Citations.]" (*Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 433, 70 N.E.2d 604, 607.) In *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628, this court held that the rule adopted in *Westinghouse* also applies to agreements to procure insurance. It has recently been observed that while the *Westinghouse* rule no longer applies to contracts covered by the indemnity statute, it still applies to indemnity provisions not covered by that Act. (See *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934.) Since agreements to procure insurance for indemnification purposes are not prohibited by the statute (*Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189), the *Westinghouse* rule is still applicable to construction of the contract between AC & S and Lurgi, and we note that the language therein does not explicitly provide that AC & S must obtain insurance to indemnify Lurgi against Lurgi's own negligence and actually excludes indemnification for damages or injuries which are caused *solely* by Lurgi's own negligent acts. We therefore find that the contract did not require AC & S to obtain insurance to indemnify Lurgi from the consequences of its own actions or omissions. Nevertheless, it appears that the agreement to obtain insurance was not without effect. In *Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 410 N.E.2d 258, this court held, albeit in the context of a direct indemnity action rather than an action for breach of a contract to procure indemnification insurance, that although a contract did not explicitly hold a party harmless for its own negligence, it could still operate to indemnify that party against the negligent acts of others. See also *Hibbler v. Ockerlund Construction Co.* (1985), 130 Ill. App. 3d 30, 34, 473 N.E.2d 597 (Linn, J., dissenting).

Finally, we note that the trial court stated that, even without the requirement of clear and explicit language for indemnification in the contract, it would have to find that the "clear meaning of Article 11"

indicated that the parties did not intend to require indemnification insurance. The trial court concluded that the term "contractual liability," as used in article 11 of the contract, meant "liability to other people that he contracts with." However, article 11 quite clearly refers to article 10, the indemnity provision, and because there is no basis in article 10 for the trial court's conclusion, it appears that it erred in this construction of the agreement. We therefore believe that the agreement to obtain insurance to indemnify Lurgi could be enforceable with respect to negligence other than Lurgi's own negligence.

For the aforementioned reasons, we affirm the order of the trial court with respect to count I of Lurgi's second amended third-party complaint; and count III of Hoffman LaRoche's third amended third-party complaint; we reverse the order with respect to count III of Lurgi's complaint and count I of Hoffman LaRoche's complaint and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

PINCHAM and LORENZ, JJ., concur.