AETNA INSURANCE COMPANY, as Subrogee of Frankenthal International, Ltd., Plaintiff-Appellant, v. AMELIO BROTHERS MEAT COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 1—87—0520

Opinion filed April 26, 1989.

Garretson & Santora, of Chicago (Keil M. Larson, of counsel), for appellant.

No brief filed for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff-appellant, Aetna Insurance Company (Aetna), appeals from a judgment of the circuit court of Cook County entered in favor of defendant-appellee Amelio Brothers Meat Company (Amelio Bros.). On appeal, plaintiff argues that the trial court's finding that defendant was not liable under either negligence, strict liability, or Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 1—101 *et seq.*) theories is against the manifest weight of the evidence. We affirm.

On March 3, 1982, Aetna's insured, Frankenthal International, Ltd. (Frankenthal), a meat brokerage company, contracted with Amelio Bros. for the purchase of 40,000 pounds of 90% lean, fresh frozen, boneless pork. The purchase order specified that the product was to be packed in "poly-free, staple-free cartons," which means that the boxes were to be wax lined and sealed without staples. The order further stated that the "seller warrants that the product will be merchantable, [and] *** free from all defects of material and workmanship."

On March 4, 1982, Frankenthal contracted with Gerber Food Prod-

ucts Company (Gerber), for the resale of Amelio Bros.' frozen pork. On March 25, 1982, Gerber accepted delivery of Amelio Bros.' pork. The frozen pork was stored in Gerber's freezer. On April 21, 1982, Gerber removed the pork from the freezer and began to process it for inclusion in toddler sticks, a finished baby food product. Later that day, Gerber inspectors discovered corrugated cardboard protruding from the ends of the toddler sticks. The laboratory service manager investigated the problem and discovered that some of the boxes of frozen pork purchased from Amelio Bros. had corrugated cardboard imbedded in the bottom. Gerber notified Frankenthal on April 22, 1982, and Frankenthal informed Amelio Bros.

Gerber destroyed 986 cases of contaminated toddler sticks and submitted a claim to Frankenthal for their costs of $7,321.05. Frankenthal sought payment from Amelio Bros., but payment was refused. Thereafter, Aetna, on behalf of its insured, Frankenthal, paid Gerber $7,321.05 in satisfaction of its claim. Aetna then filed a complaint against Amelio Bros., alleging that the pork sold to Gerber was unwholesome, poisonous, unfit for human food, and tainted by cardboard fiber. Aetna's complaint seeks reimbursement of damages paid to Gerber. Following a bench trial, the court entered judgment in favor of Amelio Bros. and against Aetna and its insured, Frankenthal. This appeal followed.

■ In a bench trial, the trial judge, as the trier of fact, is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony. (*Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 176, 466 N.E.2d 1261, 1266.) A reviewing court will not substitute its judgment unless an opposite conclusion is clearly evident. (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 962, 466 N.E.2d 977, 994.) Further, a decision is not against the manifest weight of the evidence where the court's decision is supported by the evidence. *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 803, 449 N.E.2d 1358, 1365.

■ The three theories under which the plaintiff in the instant case attempted to recover are (1) negligence; (2) products liability; and (3) breach of warranty. In a negligence action, the plaintiff must establish that defendant had a duty to conform to a certain standard of conduct established by law, that defendant failed to meet that standard by a negligent act and that its failure was the cause of plaintiff's injuries. (*Moore v. Hill* (1987), 155 Ill. App. 3d 1, 4, 507 N.E.2d 1314, 1316.) In a products liability matter, the plaintiff must demonstrate that (1) he was injured; (2) the injury resulted from a condition of the product; (3) the condition was an unreasonably dangerous one; and (4) the condi-

tion existed at the time the product left the defendant's control. Finally, in order to prevail under the theories of breach of an implied or express warranty of merchantability, the plaintiff must show that the condition of the product, when it left the manufacturer's control, was the same as immediately prior to its use. *Warren v. Coca-Cola Bottling Co.* (1988), 166 Ill. App. 3d 566, 572, 519 N.E.2d 1197, 1202.

■ In the present case, the plaintiff presented no evidence to conclusively demonstrate that Amelio Bros. was responsible for the alleged presence of cardboard in the boxes of pork. Plaintiff's witness Dean Koopman, laboratory food supervisor for Gerber, testified that he assumed that the cardboard fragments were in the box when the meat was packaged. However, Nick Amelio, president of Amelio Bros. testified that the cardboard could have become attached to the meat during the thawing process after it left his place of business. While Koopman stated that Gerber processed the meat by removing and grinding it while frozen, Amelio testified that removing the meat from the box in a frozen state could cause the corrugation to stick to the meat. In short, the evidence indicates that there are numerous ways by which the corrugation could have become imbedded in the pork. Plaintiff's own speculation is insufficient to establish the necessary inference of causation in order to provide a basis for recovery. (*Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 101, 468 N.E.2d 477, 482.) Therefore, because plaintiff has failed to provide any evidence by which the court could find that the cardboard was imbedded in the pork when it left the control of defendant, plaintiff has failed to establish a right to recover under either a theory of negligence, strict liability, or breach of implied or express warranties.

■ Moreover, where a product fails to meet the buyer's expectations and purely economic damages are suffered, the buyer must seek his remedy under the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 1—101 *et seq.*), rather than under tort theories of negligence or products liability. See *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 434 N.E.2d 1132.

We therefore conclude that the trial court's judgment was not against the manifest weight of the evidence and that the judgment must be affirmed.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

FREEMAN, P.J., and WHITE, J., concur.